Filed 1/27/26  P. v. Sarabia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DANIEL SARABIA,<br><br>  Defendant and Appellant. | F088349<br><br>(Super. Ct. No. 14CMS-3764D)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Christina Simpson and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

Sarah Hacker, Kings County District Attorney, Katherine Smith, Deputy District Attorney Supervisor, and Crystal Howard, Contracted Prosecuting Attorney, as Amicus Curiae.

-ooOoo-

# INTRODUCTION

Defendant Daniel Sarabia petitioned the trial court for resentencing pursuant to section 1172.6 of the Penal Code.[1]  The trial court denied the petition at the prima facie stage after determining defendant was ineligible for relief because there was "substantial evidence" in the record that he could be found guilty of murder beyond a reasonable doubt as a major participant who acted with reckless indifference to human life in a home invasion robbery that resulted in death, a still-valid theory of murder.

On appeal, defendant contends the trial court applied an incorrect legal standard and therefore erred by denying his facially sufficient petition.  He further contends the court impermissibly engaged in judicial factfinding at the prima facie stage.  Alternatively, to the extent his claims are barred by issue preclusion, defendant asserts ineffective assistance of counsel.

The Attorney General concedes the trial court erred by denying the petition at the prima facie stage because the record fails to show defendant ineligible for resentencing as a matter of law.  The Attorney General agrees with defendant that the matter must be remanded to the trial court with instructions to proceed to an evidentiary hearing under section 1172.6, subdivision (d).

The Kings County District Attorney's Office (KCDA) filed an application for permission to file an amicus brief in support of neither party, which we granted.  The KCDA disagrees with the Attorney General's concessions.  In its amicus brief, the KCDA argues a remand is not warranted because the record of conviction establishes defendant was a major participant in the underlying felony and acted with reckless indifference to human life.  As such, the KCDA urges us to affirm the order denying the petition.

---

[1]    Undesignated statutory references are to the Penal Code.  Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

Alternatively, the KCDA requests that we remand the matter for a rehearing at the prima facie stage.

For the reasons stated below, we agree with defendant and the Attorney General that the trial court erred in denying defendant's resentencing petition at the prima facie stage. We reverse the order and remand the matter to the trial court with instructions to proceed to an evidentiary hearing under section 1172.6, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

*Charges*

A first amended information charged defendant and Ramon Avila[2] with first degree murder (§ 187, subd. (a); count 1), attempted murder (§§ 664/187, subd. (a); count 2), robbery (§ 211; count 3), conspiracy to commit robbery (§ 182, subd. (a)(1); count 4), residential burglary (§ 459; count 5), conspiracy to commit burglary (§ 182, subd. (a)(1); count 6), and street terrorism (§ 186.22, subd. (a); count 7). As to count 1, it was alleged that the murder was committed while defendant and his codefendants committed a robbery (§ 190.2, subd. (a)(17)(A)) and burglary (§ 190.2, subd. (a)(17)(G)), and that the murder was committed to further the activities of a criminal street gang (§ 190.2, subd. (a)(22)). As to counts 1 through 3, it was further alleged that a principal discharged a firearm causing great bodily injury (§ 12022.53, subds. (d), (e)(1)). It was also alleged as to counts 1 through 7 that defendant had a prior serious felony conviction (§ 667, subd. (a)) that also qualified as a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

---

[2]     Prior charging documents named other codefendants, including Carlos Osuna and Omar Marrujo.

3.

***Preliminary Hearing Evidence***[3]

On September 16, 2014, defendant sent a text message to Osuna, stating, " 'You ready to do a lick?' " A "lick" is a common term for robbery. Defendant also sent Osuna's phone number to someone saved as "Omar 11" in his phone.

That same day, at approximately 10:00 p.m., C.M. heard his dogs barking and exited his home. C.M. was confronted by four armed individuals. One individual pointed an assault rifle at C.M. and ordered him to get on the ground in English. This individual was described as "fat" and wearing green colored pants and a tan shirt with a black mask. Another individual was holding a handgun and translated the orders into Spanish, telling C.M. to do exactly as he was told or he would be shot. This individual was described as "skinnier" than the first and was wearing a dark shirt, dark or "possibly blue" pants, and a blue hat. C.M. was patted down and his pockets were searched. One individual stood over C.M. and pointed a rifle at his head, telling him to stay down or he would be shot in the head.

B.M., C.M.'s father, heard the commotion and went outside. The individuals pushed B.M. and C.M. back into their house and onto the floor. G.M., C.M.'s mother, came out from the bedroom and was forced onto the floor. Three individuals went through the house and searched for items to take while one watched over the residents. That individual told them, " 'Don't move or I'll blow your head off.' " Two "money orders" totaling $320 were taken.

Nearby, a neighbor, J.R., heard commotion and saw "figures" running around outside. J.R. went into his backyard where he met and told his son, E.R., that someone was breaking into the house next door. E.R. retrieved a .22-caliber rifle from a back shed and fired six shots into the air to scare the individuals away. J.R. took the rifle away from

---

[3]    The factual background is taken from the preliminary hearing transcript, which the trial court relied upon in assessing defendant's section 1172.6 petition.

E.R. E.R. saw defendant jump the neighbor's fence and come toward E.R. in J.R.'s backyard. E.R. told defendant to get on the ground. Refusing to get on the ground, defendant pointed a rifle at E.R., and yelled, " 'DEA, DEA,' " before running toward another portion of the property, throwing his rifle on the ground, and jumping back over the fence. E.R. later found the rifle and prescription glasses in the area where he saw defendant climb over the fence.

Shortly after 10:00 p.m., J.R. called his daughter, Z.R., said, " 'Call the police,' " and hung up. Z.R. and her husband, Oscar Ocampo, then drove to J.R.'s home to see what was happening. J.R. approached Z.R. and Ocampo as they arrived. He told them that people were breaking into the house next door. Z.R. started to hear gunshots. As J.R. was walking towards the front of his house, an individual approached and shot him in the leg.

Ocampo got back into the vehicle and drove towards the sound of the gunshots. Z.R. observed Ocampo "chasing" an individual who was running away holding a rifle. She described this person as "short and stocky," wearing a dark hooded sweatshirt and dark colored pants. Z.R. heard a single gunshot and ran to Ocampo's vehicle. She found Ocampo with a fatal gunshot wound to the head.

Early the next day, a different neighbor found defendant hiding in the bushes. At defendant's request, the neighbor drove defendant to a train station. Surveillance footage from the train station captured defendant exiting the neighbor's vehicle. Defendant's grandmother picked him up from the train station. She noticed defendant, who normally wore prescription glasses, did not have his glasses. Defendant told her he had lost them while fighting in Corcoran the night before.

Defendant used his grandmother's cell phone to send text messages to his girlfriend and explain why he was out all night. Defendant told her, " 'We've been smashing through this town all night.' " Among other things, he mentioned throwing a

"chop," which is a common slang term for an assault rifle. He also texted her: " 'I need a blunt. I need to smoke a blunt. [¶] … [¶] I think I got two of dem tho.' "

Law enforcement recovered an "AR-15" assault rifle which E.R. found in J.R.'s backyard about 150 yards away from where Ocampo was fatally shot. The rifle was sent to the Department of Justice for testing, which revealed the rifle had been converted from a semiautomatic to a fully automatic rifle. The rifle was loaded with 24 rounds of ammunition in the magazine and one live round in the chamber. The rifle also appeared to have a silencer on the muzzle, but it may not have been a functioning silencer. The pair of glasses E.R. found in J.R.'s backyard the night of the shooting contained defendant's DNA.

### Plea

On July 31, 2017, defendant pled no contest to first degree murder, and admitted the murder was committed in the perpetration or attempt to perpetrate a robbery and burglary. Defendant admitted that a principal personally used a firearm under section 12022.53, subdivision (b). The remaining counts and allegations were dismissed.[4] The trial court sentenced defendant to 25 years to life, plus 10 years for the firearm enhancement.

### Resentencing Proceedings

On December 4, 2023, defendant filed a petition for resentencing under section 1172.6. He checked boxes on a preprinted form stating an information was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime; he accepted a plea offer in lieu of a trial at which he could have been convicted of

---

[4]    The attempted murder count was dismissed with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754).

murder; and he could not presently be convicted of murder because of changes made to sections 188 and 189, effective January 1, 2019.

The trial court appointed counsel to represent defendant later that month. Defendant later substituted his counsel in February 2024. On February 21, 2024, the KCDA filed an opposition to defendant's resentencing petition. Defendant filed a reply on March 22, 2024. In his reply, defendant argued he had made a prima facie case for relief because the record contains "substantial evidence" that he was not the actual killer and that he did not act with reckless indifference to human life. Attached to his reply were pages from a police report, and his counsel's declaration concerning evidence which could be presented at an evidentiary hearing. On April 17, 2024, the KCDA filed a supplemental opposition and, among other things, objected to the admissibility of the police report attached in defendant's reply.

On April 23, 2024, the trial court held a status conference. The court's minute order showed "[d]iscussions [were] held." The court continued the matter for the parties to "review the file" and set the prima facie hearing for May 10, 2024. On May 1, 2024, defendant's counsel filed a supplemental reply.

Following another continuance, on June 7, 2024, the trial court held the prima facie hearing. At the hearing, the court summarized the record of conviction, noting defendant and others accomplished a home invasion robbery, and that defendant had texted his codefendant to " '[b]e ready to do a lick' " the day prior to the robbery. Defendant's counsel argued "our main position is that we don't believe that [defendant] acted with reckless indifference to human life." The court stated:

> "All right. So, as indicated, the defendant texted his soon-to-be coparticipant in this home invasion robbery. The four participants, including the defendant, entered the victims' home all at the same time. Each took control of a particular part of the residence in a coordinated fashion. The defendant was personally armed with a fully automatic rifle, a large capacity magazine, 27 rounds, that was actually specifically witnessed by the victims. Each participant, including the defendant, acted in the

7.

commission of the robbery inside the home. One stood tower over the victims in this matter as they were held at gunpoint. The three others went throughout the house to accomplish the robbery."

The trial court denied defendant's resentencing petition. In doing so, the court stated:

> "The Court is going to find that there is substantial evidence that the defendant was a major participant and acted with reckless disregard. The weapon he armed himself with was an automatic weapon with a large capacity magazine, one pull of the trigger would unleash those 27 rounds. His actions, as indicated, demonstrate to this Court substantial evidence that he was throughout this robbery acting with reckless indifference to human life, the manner in which the robbery was carried out, the type of weapon he armed himself with and his personal conduct.
>
> "Since the Court has found that the record of conviction contains substantial evidence that [defendant] could be found guilty of murder beyond a reasonable doubt under current law, [defendant] has failed to carry the burden of making a prima facie showing of eligibility for relief and the petition must be denied."

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court's order denying his section 1172.6 resentencing petition must be reversed because his record of conviction does not establish he was ineligible for relief as a matter of law. He argues the court applied the incorrect legal standard in reaching its conclusion that he failed to make a prima facie showing of eligibility for relief. He further argues the court engaged in judicial factfinding and credibility determinations at the prima facie stage. The Attorney General concedes the issues. Defendant requests, as does the Attorney General, that we remand the matter to the trial court with instructions to proceed to an evidentiary hearing under section 1172.6, subdivision (d).

In its amicus brief, the KCDA contends that defendant's petition was properly denied at the prima facie stage. Though the KCDA concedes the trial court's use of the "substantial evidence" standard was in error, the KCDA nonetheless requests that we

8.

affirm the order denying defendant's petition because the record conclusively established defendant was a major participant in the underlying felony who acted with reckless indifference to human life.  Alternatively, in the event we determine a remand is necessary, the KCDA urges us to remand for a rehearing at the prima facie stage.

### Legal Principles and Standard of Review

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) "amend[ed] the felony murder rule and the natural and probable consequences doctrine … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 967 (*Lewis*).)  "As part of these ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime."  (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*).)  "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of … [s]ection 190.2'—that is, the statute defining the felony-murder special circumstance."  (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

Through the creation of section 1172.6, the Legislature "offered relief to those convicted under certain homicide theories, such as murder or attempted murder under the natural and probable consequences doctrine, whose convictions are now tainted."  (*Patton*, *supra*, 17 Cal.5th at p. 556.)  "Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief (*id*., subd. (b)), and second, make a 'prima facie showing' (*id*., subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of

9.

resentencing at which the People will bear the burden of defending a conviction under the amended law (*id*., subd. (d))." (*Patton*, at p. 556.)

In the first step, "[a] petition that includes '[a] declaration by petitioner that the petitioner is eligible for relief …, based on all the requirements of subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient and entitles the petitioner to counsel." (*Patton*, *supra*, 17 Cal.5th at pp. 558–559.) "At this initial stage, 'substantive merit' is not the question. [Citation.] This minimal compliance requirement for '[a]ppointing counsel' assures a petitioner assistance 'in navigating the[] complex theories' of murder liability a section 1172.6 petition implicates that are ' "not easily understood by an unrepresented litigant," ' thus promoting the reliability of the petitioning process." (*Id*. at p. 562.)

"A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists." (*Patton*, *supra*, 17 Cal.5th at p. 559.) " 'After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.' " (*Ibid*.) If the petitioner has made a prima facie case, the court must proceed "to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*Id*. at p. 562.)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.) The inquiry in this

10.

stage is " 'limited,' " but it is not "simply duplicative of the facial inquiry." (*Patton*, *supra*, 17 Cal.5th at p. 562, fn. omitted.) " 'The record of conviction will necessarily inform the trial court's prima facie inquiry …, allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*Id*. at p. 563.) This procedure is " 'consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed' without the need for an evidentiary hearing." (*Patton*, at p. 563; see *Lewis*, at p. 972 ["[T]he 'prima facie bar was intentionally and correctly set very low.' "].) " 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 450.) " ' "This is a purely legal conclusion, which we review de novo." ' " (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

*Analysis*

All parties agree, as do we, that the trial court used an incorrect legal standard to deny the petition at the prima facie stage. The court erred by applying the "substantial evidence" standard in concluding defendant was ineligible for relief. The statute does not permit a court to deny a petition at the prima facie stage based on a determination that substantial evidence shows defendant is ineligible for relief.[5] (§ 1172.6, subd. (c).) Instead, at this stage, the defendant need only make "a prima facie case for relief." (*Ibid*.) In this inquiry, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

---

[5] Moreover, in subdivision (d)(3) of section 1172.6, which addresses the evidentiary hearing, the statute makes clear: "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

11.

The KCDA argues that, regardless of the trial court's use of an incorrect standard, the petition was properly denied at the prima facie stage because the record of conviction establishes defendant was a major participant in the underlying felony who acted with reckless indifference to human life. The KCDA's argument misses the mark. The prima facie inquiry is limited, and the bar for passing this stage is " 'intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972; see *Patton*, *supra*, 17 Cal.5th at p. 567 ["A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator."].) Whether defendant was a major participant in the underlying felony who acted with reckless indifference to human life is a determination which must be made beyond a reasonable doubt. (See *People v. Strong*, *supra*, 13 Cal.5th at p.720.) To reach such a determination at the prima facie stage would require the trial court to engage in impermissible factfinding. (See *Lewis*, at p. 972 [noting a trial court should not engage in factfinding involving the weighing of evidence]; see also *In re Scoggins* (2020) 9 Cal.5th 667, 683 ["Determining a defendant's culpability under [section 190.2, subdivision (d)] requires a fact-intensive individualized inquiry."].)

In making this argument, the KCDA highlights facts from the preliminary hearing transcript upon which the trial court relied. The KCDA asserts: "While there were disputes as to the interpretation of some of the evidence, the evidence on which the lower court relied—and thus what was 'material'—for its denial was undisputed." However, a dispute as to the interpretation of the evidence plainly suggests an evidentiary hearing was warranted. (*Patton*, *supra*, 17 Cal.5th at p. 567 ["should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing"].)

The Supreme Court's recent opinion in *Patton* is instructive. In *Patton*, the defendant was charged with premeditated attempted murder among other offenses. (*Patton*, *supra*, 17 Cal.5th at p. 557.) At the preliminary hearing, several still photos

12.

taken from surveillance video were received into evidence. (*Ibid*.) The photos depicted a shooter firing his gun at a victim. (*Ibid*.) A police officer who was familiar with the defendant from previous encounters identified him as the shooter, and another officer testified the shooter was wearing jeans matching those the defendant was wearing in a photograph police later acquired. (*Ibid*.) The defendant eventually pleaded no contest to attempted murder. (*Ibid*.) When the defendant filed a petition for resentencing under section 1172.6, he checked boxes next to statements on a preprinted form asserting he could not presently be convicted of attempted murder based on the changes to the law on homicide. (*Id*. at p. 559.) After deeming the petition facially sufficient and appointing counsel, the trial court denied the petition at the prima facie stage. (*Id*. at pp. 559–560.)

The Supreme Court in *Patton* clarified the extent to which the trial court may use the preliminary hearing transcript at the prima facie stage. (*Patton*, *supra*, 17 Cal.5th at p. 568.) The Supreme Court held that a trial court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations" in a petition at the prima facie stage. (*Id*. at p. 564.) According to the *Patton* court, to accept facts from the record of conviction which are undisputed over contrary legal allegations "is not ' "factfinding involving the weighing of evidence or the exercise of discretion." ' " (*Id*. at pp. 565–566.) Therefore, "a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id*. at p. 565.)

Here, by contrast, the preliminary hearing transcript did not establish defendant was the direct perpetrator. (See *Patton*, *supra*, 17 Cal.5th at p. 569 ["statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter"].) Instead, the preliminary hearing transcript established defendant was one of four individuals involved

13.

in the underlying felony, an armed robbery of a home, which resulted in the murder of Ocampo. But the record does not foreclose the possibility that one of the other three individuals was the direct perpetrator. That possibility arises from the testimony provided at the preliminary hearing, not speculation "conjured from thin air." (*Patton*, at p. 567.) Accordingly, unlike in *Patton*, the record of conviction here did not refute the allegations in defendant's resentencing petition.

The KCDA notes that, if it is improper to decide at the prima facie stage whether defendant was a major participant who acted with reckless indifference, a petition by a defendant prosecuted under this rubric of culpability could never be denied at the prima facie stage. The KCDA appears to misunderstand the purpose of the prima facie stage. The prima facie inquiry allows a court to distinguish petitions with "potential merit" from those that are "clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court can efficiently address a clearly meritless petition at this stage. (*Ibid*.; see *Patton*, *supra*, 17 Cal.5th at p. 566 ["The ultimate question at the prima facie stage is whether to proceed to an evidentiary hearing."].) However, the bar to move past the prima facie stage is " 'very low.' " (*Lewis*, at p. 972.) We conclude only that defendant met this very low bar.[6] Accordingly, although the KCDA further argues the preliminary hearing transcript establishes defendant was a major participant in the underlying felony and acted with reckless indifference to human life under California Supreme Court precedents, we decline to reach this determination as it would necessarily involve improper factfinding.

We conclude defendant made a prima facie showing of eligibility, and the trial court erred by concluding otherwise.[7] The order denying defendant's section 1172.6

---

[6] We express no opinion on the ultimate resolution of defendant's petition after an evidentiary hearing on remand.

[7] Although the KCDA alternatively urges us to remand for a rehearing at the prima facie stage, we decline to do so. The trial court reached a determination about

14.

petition is vacated, and the matter is remanded for the court to issue an order to show cause and proceed to an evidentiary hearing.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is reversed and the matter is remanded. The trial court is directed to issue an order to show cause and proceed to an evidentiary hearing under section 1172.6, subdivision (d).


                                                              HARRELL, J.

WE CONCUR:


HILL, P. J.


MEEHAN, J.

---

whether defendant carried his burden of showing a prima facie case of eligibility for relief and we conducted a de novo review of the trial court's determination. We see no cause to remand for a rehearing on the prima facie determination.